# Commonwealth, Appellant, *v*. Mutual Union Brewing Company.

*Liquor law—Brewing companies—License—Violation of Premium Act of June 12, 1913, P. L. 490—Payments to the state treasurer—Acts of June 21, 1897, P. L. 176, and July 30, 1897, P. L. 464.*

1. An incorporated brewing company may be convicted of violating the act of June 12, 1913, which prohibits the offering of premiums "by any person, partnership or corporation licensed to sell vinous, spirituous, malt or brewed liquors," for the return of caps, stoppers, corks, stamps or labels, although the company has not received a license from the court of quarter sessions, if it appears that it has availed itself of the provisions of the Act of June 21, 1897, P. L. 176, and has paid into the state treasury the fees required to be paid by manufacturers for the purpose of obtaining the benefits of the Acts of June 21, 1897, P. L. 176, and July 30, 1897, P. L. 464. Such a company is "licensed" within the meaning of the Act of June 12, 1913, P. L. 490.

2. The Act of July 30, 1897, P. L. 464, does not repeal the Act of June 21, 1897, P. L. 176, but both acts must be construed in pari materia.

3. The Act of June 12, 1913, P. L. 490, is a penal act and to be strictly construed; its scope is not to be enlarged or extended to cases not obviously within its words.

*Constitutional law—Personal rights of citizen—Liquor law act of June 12, 1913, P. L. 490.*

4. The Act of June 12, 1913, P. L. 490, prohibiting the offering or giving of premiums by licensed liquor dealers for the return of caps, stoppers, corks, stamps or labels is not unconstitutional as class legislation, nor as an invasion of the personal rights of a citizen.

Argued Oct. 13, 1914. Appeal, No. 100, April T., 1915, by plaintiff, from judgment of Q. S. Allegheny Co., May Sessions, 1914, No. 45, of not guilty on special verdict in case of Commonwealth v. Mutual Union Brewing Company. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Indictment for violation of the Act of June 12, 1913, P. L. 490. Before MACFARLANE, J.

648  COMMONWEALTH, Appellant, v. M. U. B'WING CO.

Statement of Facts—Opinion of the Court.  [58 Pa. Superior Ct.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment of not guilty on special verdict.

*R. H. Jackson*, district attorney, with him *R. M. Gibson*, assistant district attorney, for appellant.—The defendant was licensed within the meaning of the act: United States v. Wiltberger, 5 Wheaton, 76; United States v. Winn, 3 Summ. 209; Hadley v. Western Union Tel. Co., 115 Ind. 191.

By consulting statutes in pari materia it will be conclusively shown that the legislature regarded brewers authorized by the state treasurer's license or certificate, to sell at wholesale to licensed wholesalers or retailers as licensed to sell at wholesale, and consequently intended them to be within the act of June 12, 1913: United States v. Cutting, 70 U. S. 441; Pittsburg Brewing Co.'s License, 12 Pa. Superior Ct. 176.

*J. E. B. Cunningham*, with him *Blakeley & Calvert*, for appellee, cited: Com. v. Gouger, 21 Pa. Superior Ct. 217; People v. Gillson, 109 N. Y. 389; People v. Dycker, 72 App. Div. (N. Y.) 308; State v. Dalton (R. I.), 48 L. R. A. 775.

OPINION BY RICE, P. J., February 24, 1915:

Section 1 of the Act of June 12, 1913, P. L. 490, under which the defendant was indicted, declares it to be "unlawful for any person, partnership, or corporation, licensed to sell vinous, spirituous, malt, or brewed liquors at wholesale or retail, to offer or give anything of value as a premium for the return of caps, stoppers, corks, stamps, or labels taken from any bottle, case, keg, barrel, or package containing such vinous, spirituous, malt, or brewed liquors." The jury rendered a special verdict, in which they set forth the facts found by

them, among which are the following.   For the sake of
brevity we state them in our own words: The defendant
was incorporated under the laws of the commonwealth
for the purpose of the manufacture and sale of beer,
porter, and all other malt liquors; it never applied for or
received a license of any kind from any court of quarter
sessions of the commonwealth; but from year to year it
availed itself of the provisions of the Act of June 21,
1897, P. L. 176, and paid into the state treasury for
the use of the commonwealth, the fees required by law
to be paid by manufacturers of malt or brewed liquors
"for the purpose of obtaining the benefits of said act
and Act of July 30, 1897, P. L. 464;" and each year it
obtained from the state treasurer the certificate re-
quired by the act of June 21, 1897, to be issued by that
officer.

The question to be decided is, whether the defendant
was "licensed," within the true intent and meaning of
the foregoing section of the act of 1913.   The statute
being penal must be construed strictly.   It is not to be
enlarged by implication or extended to cases not ob-
viously within its words.   Although the case is fairly
within the mischief to be remedied, and is even of the
same class and within the same reason as other cases
enumerated, still, if not within the words, construction
will not be permitted to bring it within the statute:
Bish. on St. Crimes, sec. 220; 2 Hawkins P. C. (Curw.
ed.), p. 188, sec. 16; Com. v. Gouger, 21 Pa. Superior
Ct. 217.   Courts are less ready to extend criminal
statutes to include cases within the mischief but not the
words, than to restrain them so as to exclude cases
within the words but not the mischief: Rex v. Parker,
2 East. P. C. 592.   It is to be observed, on the other
hand, "Strict construction is not the same thing as
construing everything to defeat the action.   This is not
what is meant by the expression."   Thompson, J., in
Bartolett v. Achey, 38 Pa. 273.   The rule of strict con-
struction in favor of the accused is not violated by giv-

ing the words a reasonable meaning according to the sense in which they were intended, even though in a different connection a more restricted meaning would be ascribed to them: Com. v. Gouger, supra. The intention of the legislature must govern in the construction of penal as well as other statutes; therefore, "though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend." Chief Justice MARSHALL in United States v. Wiltberger, 5 Wheat. 76. A brewer needs no license to manufacture, but the general policy of the commonwealth, as exhibited by and embodied in its statutes, forbids him to sell the product of his manufacture without complying with certain conditions precedent which the state has prescribed. By complying with them he obtains the privilege to sell—a privilege not enjoyed by the generality of citizens. The privilege to sell generally is obtained through proceedings in the court of quarter sessions, but the privilege to sell only to dealers licensed by the court may be obtained by paying a certain sum into the state treasury and obtaining from the state treasurer "a certificate thereof which shall be framed and exposed to view in said brewery." This right or privilege is, in both classes of cases, granted by the state, and permits the doing of that which without such grant would be unlawful. To license is: "To grant a right or permission to do an act, or pursue a business that without such grant would be illegal, unauthorized or inadmissible; as to license liquor selling; to license a pilot; to license a candidate for the ministry." New Standard Dictionary, Title: License. When used with reference to governmental regulation, license has been thus defined: "Authority to do some act or carry on some trade or busi-

ness, in its nature lawful but prohibited by statute, except with the permission of the civil authority, but which would otherwise be unlawful:" Bouv. Law Dict., Rawle's Ed., 1897. It is not necessary, therefore, to extend the word "license" beyond its well-recognized and commonly accepted general meaning in order to include the defendant within the penal provisions of the act of 1913. While, as already indicated, a penal statute is not to be extended by construction to include a case within the mischief but not within its words, yet, where words are used which in their general meaning are broad enough to include it, and they are not restrained by the context, it is perfectly proper to take into consideration the mischief which the legislature had in view, before ascribing by construction a more restricted meaning to the words. The following language of Mr. Justice STORY upon this subject is instructive: "Penal statutes are not to be enlarged by implication, or extended to cases not obviously within their words and purport. But where the words are general and include various classes of persons, I know of no authority which would justify the court in restricting them to one class, or in giving them the narrowest interpretation, when the mischief to be redressed by the statute is equally applicable to all of them. And when a word is used in the statute which has various known significations, I know of no rule that requires the court to adopt one in preference to another, simply because it is more restrained, if the objects of the statute equally apply to the largest and broadest sense of the word. In short, it appears to me that the proper course in all these cases is to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context and promotes in the fullest manner the apparent policy and objects of the legislature:" United States v. Winn, 3 Sumner, 209. See, further, Endlich on Interp. of Statutes, sec. 339. When the nature of the acts prohibited by the act of

1913 is considered, it is impossible to see any reason which would move the legislature to discriminate between brewers exercising privileges they obtained through proceedings in the quarter sessions and brewers exercising privileges they obtained by compliance with the provisions of the acts of 1897. We do not say that the legislature might not discriminate between the two classes, and make it unlawful for brewers of one class to do the specified acts without making it unlawful for brewers of the other class to do them. But the inference that they intended such discrimination is not deducible from the context, and is strongly repelled by the consideration that the prohibited acts, whether performed by brewers of the former or by brewers of the latter class, are equally within the mischief the legislature had in view and intended to remedy.

Another very strong reason for concluding that the legislature did not intend such discrimination, but did consider that a brewer who obtains the privilege as the defendant did is a licensed brewer, is furnished by the act of July 30, 1897; and it is to be observed the defendant claimed and obtained the benefits of that act as well as of the act of June 21. The rule applies to penal as well as remedial acts, that other acts in pari materia may be consulted to ascertain the intent of the legislature: Endlich on Interp. of Statutes, sec. 356. Particularly should the rule apply when the two acts were passed at the same session of the legislature. Recurring to the act of July 30, it is found that the amount to be paid for the privilege is designated as a "license fee;" that the applicant is required to set forth in his application certain matters "in order that the court or state treasurer may fix the amount of the license as provided by this act;" that any brewer, "upon paying into the state treasury for the use of the commonwealth the sum of one thousand dollars, annually, shall be licensed by the state treasurer to sell and deliver, but only to liquor dealers licensed by the courts;" then follows a proviso

that the amount to be paid to the state treasurer shall not be less than the amount required to be paid under the brewers' classification provided for in this act, "and upon payment of said sum into the state treasury the state treasurer shall issue a license as aforesaid, which shall be framed and exposed to view in said brewery." True, a later clause of the same section declares that the act "shall not be construed so as to in any manner repeal or conflict with" the act of June 21, except as to the amount to be paid. Therefore, the learned trial judge was clearly right in saying this means that the act of June 21 stands and the privilege granted by it is not repealed. But it is not necessary to rest this case on any supposed repeal. Both acts relate to the same subject-matter, namely, the privilege to be obtained by brewers through the state treasurer to sell in wholesale quantities to a limited class, both acts were passed by the same legislature, and therefore both are to be considered in determining what the legislature intended. We do not see how there can be reasonable doubt that the legislature of 1897 intended to provide for the licensing of that class of brewers.

It is to be presumed that the legislature was cognizant of the legislation of 1897, and passed the act of 1913 with that in view. If it had been its intention to restrict its provisions to acts of brewers licensed by the quarter sessions, and to exclude from its operation acts of another class of brewers which are equally within the evil to be prevented, it would have been easy to say so. Not having so expressly restricted them, but having used words which, in their well-recognized and commonly accepted general meaning, include brewers who obtain the privilege to sell through proceedings in the quarter sessions as well as brewers who obtain their privilege to sell through the state treasurer under the acts of 1897, we are constrained to adopt that construction which promotes in the fullest manner the apparent policy and objects of the legislature, and to

reject the construction which would partially defeat its apparent purpose.  By so doing we do not depart from the words, but carry out the true intention of the legislature, which is the object of all construction.  Our conclusion is, that the defendant was a licensed brewer within the true intent and meaning of the act of 1913.

Objection is raised against the constitutionality of the act, but upon that question we entirely concur with the view taken by the learned trial judge when he says: "However, it seems to us that its purpose is to regulate and restrain the sale of intoxicating liquors and that it is an exercise of the police power, and instead of its being an invasion of personal rights of a citizen it is an imposition of a further condition upon which a license is granted.  The sale of liquor has always been distinguished in this state from the sale of ordinary merchandise and restrictions upon its sale are not class legislation."

The judgment is reversed, and the record is remitted to the court of quarter sessions of Allegheny county, with direction to enter judgment of guilty on the special verdict and to sentence the defendant accordingly.