Knecht, Appellant, v. Medical Service Association of Pennsylvania, Inc.

Argued April 14, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Morris Mindlin,* with him *Jackson M. Sigmon,* and *Mindlin and Sigmon,* for appellant.

*George H. Hafer,* with him *Robert L. Rubendall, O. J. Tallman,* and *Hull, Leiby and Metzger,* and *Butz, Hudders; Tallman and Rupp,* for appellee.

OPINION BY RHODES, P. J., June 11, 1958:

This is an appeal by plaintiff from judgment on the pleadings entered for defendant by the Court of Common Pleas of Lehigh County in an action of assumpsit brought by plaintiff to recover for dental services under a medical-surgical agreement between plaintiff and defendant, known as a "Blue Shield" contract.

On February 21 and 22, 1957, plaintiff received dental services from Dr. Edward Weiner, a dentist, at the Allentown Dental Hospital, and a bill for $35 was rendered. The bill was presented to defendant, Medical Service Association of Pennsylvania, Inc. Defendant refused to pay the bill under the contract for the reason that the services were not rendered in an "accredited hospital."

Plaintiff filed his complaint in assumpsit to recover the sum of $35. The complaint was supplanted by an amended complaint to which defendant filed an answer with new matter. Plaintiff filed a reply to the new matter and moved for judgment on the pleadings. After argument thereon the court below filed its opinion, written by President Judge HENNINGER, and entered judgment for defendant.

On a motion for judgment on the pleadings under Pa. R. C. P. No. 1034 (b), a court may enter any judgment or order which is appropriate on the pleadings, and it may, as here, enter judgment against the party making the motion. See *Boron v. Smith.* 380 Pa. 98, 102, 110 A. 2d 169; *Rose Township v. Hollobaugh,* 179 Pa. Superior Ct. 284, 299, 116 A. 2d 323. While a summary judgment should be entered only where the case is clear and the pleadings are not amendable, the present case is one in which the facts are clear; the issue involves merely the interpretation and application of the law to those facts. See *Lehner v. Montgomery,* 180 Pa. Superior Ct. 493, 500, 501, 119 A. 2d 626.

The medical-surgical agreement between plaintiff and defendant provided in part: "The Subscriber, when admitted as an In-Patient in an Accredited Hospital or an Accredited Dental Hospital, shall be entitled to oral surgical Services . . . provided by a doctor of dental surgery who is a member of the staff

of an Accredited Hospital; . . ." The dental services rendered to plaintiff were of a nature which would have been covered by the contract if they had been furnished in an accredited hospital by a doctor of dental surgery who was a member of the staff of an accredited hospital. An "accredited dental hospital" is defined in the contract as "a dental hospital approved by the Joint Committee on Accreditation of Hospitals and such other dental hospitals as may be approved by Blue Shield. Blue Shield's determination that a dental hospital is accredited shall be conclusive." The Allentown Dental Hospital, where the services were performed for plaintiff, is licensed by the Department of Welfare of the Commonwealth of Pennsylvania, Bureau of Homes and Hospitals, as a private hospital under the Act of June 12, 1931, P. L. 510, §§1, 4, as amended, 35 PS §§424, 427, but it has not been accredited by the Joint Committee on Accreditation of Hospitals or by Blue Shield.

Plaintiff admits that the contract between plaintiff and defendant does not, according to its terms, require payment for the services rendered to plaintiff in the Allentown Dental Hospital since it is not an "accredited hospital" as that term has been defined in the contract. Plaintiff questions, however, the authority of defendant to define the term "accredited hospital" in the contract, and contends that such a restricted definition of the term is illegal and not in accord with the Nonprofit Medical and Dental Service Corporation Act of May 12, 1949, P.L. 1261, as it re-enacted and amended the Act of June 27, 1939, P. L. 1125, 15 PS §2851-1501 et seq.[1] Since defendant

---

[1] In 1949 the Legislature passed two separate Acts re-enacting and amending the Act of 1939, as amended; the first included doctors of osteopathy, the other included doctors of dental surgery,

association was created under authority of the Act of June 27, 1939, P.L. 1121, as amended by the Act of May 12, 1949, P.L. 1274, 15 PS §2851-219, for the purposes therein expressed (and in the Act of May 12, 1949, P.L. 1261, 15 PS §2851-1501), it may not exceed the authority granted or alter the provisions of the statute.

Section 3 of the Nonprofit Medical and Dental Service Corporation Act, 15 PS §2851-1503,[2] provides: "For the purposes of this act only and not for the purposes of defining medical practice or dental practice as such, the terms stated below have the meanings assigned to them, respectively. . . . 'Dental services' means the general and usual services rendered by

_____

within the scope of the Nonprofit Medical Service Corporation Act of June 27, 1939, P.L. 1125. In volume 15 of Purdon's Pennsylvania Statutes (1957 Cumulative Annual Pocket Part) both independent acts have been given the same section numbers beginning §2851-1501. The Act relating to osteopathy begins on page 172 thereof; the Act relating to dental services begins at page 180 thereof. Our references shall be to the second Act or the section numbers beginning at page 180.

[2] The Nonprofit Corporation Law of May 5, 1933, P.L. 289, was amended by the Act of June 27, 1939, P.L. 1121, to permit the incorporation of nonprofit corporations for the purpose of furnishing professional medical services to subscribers. The Act of June 27, 1939, P.L. 1125, provided for the regulation and supervision of nonprofit medical service corporations. Dental services were not included. By the Acts of April 18, 1949, P.L. 583, and April 18, 1949, P.L. 587, 15 PS §§2851-219, 2851-1501, Purdon's Pocket Supplement, pp. 137, 172, osteopathic services were added. By the Acts of May 12 1949, P.L. 1274, and May 12, 1949, P.L. 1261, 15 PS §§2851-219, 2851-1501, Purdon's Pocket Supplement, pp. 138, 180, certain dental services were added. By the Acts of December 9, 1955, P.L. 818, 15 PS §2851-220, and December 9, 1955, P.L. 819, 15 PS §2851-1551, the Legislature provided for the incorporation and regulation of special nonprofit dental service corporations; the latter Acts are not here involved since "Blue Shield" was not incorporated thereunder.

doctors of dental surgery serving in the capacity of a staff member of an accredited hospital, provided such services are rendered in an accredited hospital."[3]  The Act, however, does not define the term "accredited hospital."

Plaintiff's contention is that under the Nonprofit Medical and Dental Service Corporation Act the term "accredited hospital" means a hospital which is licensed by the Commonwealth, and that the defendant could not require a greater degree of accreditation in the contract than the licensing.  The issue therefore is whether the Legislature intended the term "accredited hospital" to be synonymous with "licensed hospital" or whether it intended something additional or different.  We think it is clear, as hereinafter pointed out, that the Legislature did not intend that the term "accredited hospital" should be synonymous with the term "licensed hospital."  The Act providing for the licensure and regulation of private hospitals by the Department of Welfare, Act of June 12, 1931, P.L. 510, as amended by the Act of April 12, 1956, P.L. (1955) 1460, §2, 35 PS §424, provides: "After the effective date of this act, it shall be unlawful for any person . . . to operate for profit, within this Commonwealth, a private nursing home, private convalescent home or private hospital, for persons requiring care, treatment, or nursing by reason of sickness, injury, infirmity, pregnancy, or other disability, without a license as hereinafter required, but this act shall not be construed to apply to any State or State-aided institution or any institution licensed by the Department of Welfare under other statutes."  If in the

---

[3] The same definition appears in the Nonprofit Corporation Law, Act of May 5, 1933, P.L. 289, as amended by section 1 of the Act of May 12, 1949, P.L. 1274, 15 PS §2851-219 (b), Purdon's Pocket Supplement, pp. 138, 139.

Nonprofit Medical and Dental Service Corporation Act the Legislature intended "accredited" to be synonymous with "licensed," it would have excluded State hospitals and State-aided institutions which the Act providing for the licensure and regulation of private hospitals (35 PS §424 et seq.) specifically excluded from the requirement of licensure thereunder.[4] Plaintiff's contention that the Acts are in pari materia, and that "accredited" is thus synonymous with "licensed" is without merit. The Acts do not relate to the same subject matter; one relates to medical and dental service, and the other relates to the licensing of private nursing homes, private convalescent homes, and private hospitals.

The term "license," when used with reference to governmental regulation, has been defined: " 'Authority to do some act or carry on some trade or business, in its nature lawful but prohibited by statute, except with the permission of the civil authority, but which would otherwise be unlawful.' " *Com. v. Mutual Union Brewing Company*, 252 Pa. 168, 171, 97 A. 206, 207. The operation of a private hospital, while inherently a lawful pursuit, is prohibited by statute in the absence of permission granted by the Commonwealth in the form of a license. But the grant of a license does not carry any greater indicia than the permission to conduct the business of a private hospital for profit. It is possible that, where the requirements for licensing are as strict as the requirements for accreditation, the term "licensed" might coincidentally be synonymous with the term "accredited." See *Palmer v. O'Hara*, 359 Pa. 213, 215, 58 A. 2d 574. But the mere

---

[4] We find no statutory requirement that State hospitals and State-aided hospitals be licensed, although they are under the supervisory jurisdiction of the Department of Welfare. Act of May 25, 1921, P.L. 1144, §9, 71 PS §1469.

fact that a private hospital is licensed by the Department of Welfare does not in and of itself indicate accreditation. See *Palmer v. O'Hara,* supra, 359 Pa. 213, 222, 58 A. 2d 574. "Accredited" has been held to mean that an institution is on an accredited or approved list prepared by some recognized rating group or association. See *Louisiana Board of Pharmacy v. Smith,* La. App., 65 So. 2d 654, 658; *Ex parte Florida State Bar Association Committee on Legal Education and Admission to the Bar,* 148 Fla. 725, 5 So. 2d 1, 3. By common understanding, "accredited" connotes achievement of high standards and the resulting recognition therefor. As a matter of fact, this is true in the medical and legal professions, in education, and, to a greater or lesser degree, in most fields of human endeavor, The Statutory Construction Act of May 28, 1937, P. L. 1019, §33, 46 PS §533, provides: "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning . . . shall be construed according to such peculiar and appropriate meaning or definition." Whether the term "accredited hospital" is given the common and approved usage, or the peculiar and appropriate meaning in the medical and dental professions, it still conveys the idea that some approval greater than mere licensing is involved. The common and the technical meanings are identical in this respect. The Legislature intended a meaning consistent with the tenor and subject matter of the Act. This appears from the fact that the Nonprofit Medical and Dental Service Corporation Act is concerned with medical and dental services and uses terms associated with those professions. The context in which words are used by the Legislature must be considered in their interpretation. *Horosko v. Mount*

*Pleasant Township School District,* 335 Pa. 369, 373, 6 A. 2d 866.

As President Judge HENNINGER stated in his opinion:

"To say that Weiner's hospital is a 'licensed' hospital is not to say that it is necessarily an 'accredited' hospital. If the legislature had intended the Act to apply to all 'licensed' hospitals, it could have so stated. We must assume that the word 'accredited' was used deliberately and that it means something more and other than 'licensed.'

"Etymologically the word license has a connotation of permission rather than of acclaim. Licensing connotes meeting the least of standards; accrediting connotes positive achievement of high standards. The word accredited does mean 'authoritatively approved,' but that definition leaves open the nature of the approving authority. It could conceivably be the Commonwealth, which licensed Weiner's hospital; on the other hand it could mean approval by a National Medical or Hospital Association or by a committee set up by either or both, or it could mean approval by Blue Shield."

It may well be, as plaintiff contends, that the Allentown Dental Hospital in its physical plant meets the standards of the most vigorous accrediting agency. However, the Legislature provided that the hospital must be accredited, which is not true of the Allentown Dental Hospital. While we must conclude that the term "accredited hospital" is not synonymous with the term "licensed hospital," and that it means an approval by a recognized rating group or association, we cannot on this record state that the Joint Committee on Accreditation of Hospitals and the Blue Shield itself are such recognized rating groups or associations as the Legislature intended. Any presumption would be

subject to the doubt as to the nature of the accrediting agency expressed by President Judge HENNINGER. Our holding in this respect must therefore be restricted to a determination that the Allentown Dental Hospital where the services in question were rendered is not an "accredited hospital" within the meaning of the legislative act merely because it is licensed by the Department of Welfare. It is unnecessary to determine whether the Joint Committee on Accreditation of Hospitals and the Blue Shield itself were intended by the Legislature to be the accrediting agencies. This is a matter for the Legislature to clarify as there are a number of recognized accrediting groups or associations.

We are not unmindful that the specific intent of the Legislature in using the term "accredited hospital" is not clear with respect to the nature of the accrediting authority, but it does not follow, as plaintiff suggests, that the provision in the contract to which he agreed— that an accredited hospital should be one so designated by the Joint Committee on Accreditation of Hospitals or Blue Shield—is illegal and contrary to the Act and of no effect. President Judge HENNINGER well said in his opinion: "The parties have chosen accreditation by the Joint Committee on Accreditation of Hospitals or that of the Medical Service Association. It is admitted in the pleadings that Weiner has obtained neither approval and therefore his hospital is not an accredited hospital within the terms of the law or of the contract." There is nothing illegal about this provision of the contract since the Legislature contemplated an accreditation as distinguished from a mere license. Even if the definition of "accredited hospital" is stricken from the contract, there remains the requirement imposed by the Legislature and also set forth in the contract that the dental services be

performed in an accredited hospital. This condition has not been met in the case of this plaintiff.

Plaintiff also presents the argument that, since the Nonprofit Medical and Dental Service Corporation Act in section 7, 15 PS §2851-1507, sets forth certain limitations with respect to the service to be provided by the nonprofit corporation, none of which relate to the hospital in which the services are to be performed, the Legislature thereby restricted any limitations on the service to those specifically enumerated, and that defendant consequently could not restrict the term "accredited hospital" in its contract. This argument is based on the rule of interpretation that the mention of one thing implies the exclusion of another, and thus the mention of a few restrictions specifically enumerated indicates that the Legislature intended those to be the only restrictions or limitations on the service provided by defendant. The answer to this contention is obvious. In the statute the Legislature used the term "accredited hospital," and the question is one of interpreting what the Legislature intended; it is not a question of the enumeration of restrictions or limitations set forth in another section of the Act which do not relate to the same matter. The requirement that the services be performed in an accredited hospital is in section 3 of the Act, 15 PS §2851-1503, which also defines other terms used in the Act. There must be compliance with this requirement appearing in a section of the Act other than the one in which certain restrictions are enumerated. Our statement in *United States v. Pennsylvania Public Utility Commission,* 184 Pa. Superior Ct. 380, 386, 135 A. 2d 93, 96, is applicable to plaintiff's position: "The doctrine that the inclusion of certain classes infers the exclusion of others is an aid which may be used to ascertain the legislative intent; but it is not of universal appli-

cation and it may not be applied where it would defeat the apparent intention of the Legislature." The definition of dental services in Section 3 of the Act, 15 PS §2851-1503, clearly provides that the services are to be rendered in an "accredited hospital" rather than in a hospital that is merely licensed.*

The judgment is affirmed.

---

* Since this opinion was filed on June 11, 1958, a revised volume of Purdon's Statutes covering Title 15 has been published in which the three Acts passed in 1949, amending the Nonprofit Corporation Law and making no reference to each other (Act of April 18, 1949, P. L. 583; Act of May 11, 1949, P. L. 1119; and Act of May 12, 1949. P. L. 1274) have been merged and explanation made in the His-torical Notes (15 PS §2851-219) of the fact that the section was amended three times in 1949 without any amendment making a reference to the other.

Likewise, the three amendments of the Act regulating Nonprofit Medical, Osteopathic and Dental Service Corporations (Acts of April 18, 1949, P. L. 587; May 11, 1949, P. L. 1124; and May 12, 1949, P. L. 1261) have been merged in the revised volume covering Title 15, §2851-1501 et seq.