414 A.2d 1091

**ASSOCIATES FINANCIAL SERVICES COMPANY, INC.,**

v.

**George DELICH, Appellant.**

Superior Court of Pennsylvania.

Submitted April 12, 1979.

Filed Nov. 28, 1979.

George Retos, Jr., Washington, for appellant.

Reed J. Davis, Pittsburgh, for appellee.

Before PRICE, HESTER and MONTGOMERY, JJ.

PRICE, Judge:

The instant proceeding was brought by appellee to secure a deficiency judgment arising from the foreclosure of a security interest in a tractor sold under an installment sales contract. Appellant contends that the court erred in permitting appellee to recover various items of repair as a part of the deficiency judgment and in concluding that the retention by appellee of the tractor and the transfer of the title to itself prior to resale did not effect an accord and satisfaction thereby discharging appellant's liability for a deficiency judgment. Finding no error in the trial court, we affirm.

On October 1, 1974, appellant purchased a 1975 Marmon tractor under a conditional sales contract for a total consideration of $34,970.90 (including finance charges of $7,270.00).

On the same date, the dealer assigned the contract to appellee. Appellant made an initial downpayment of $4,001.00 and subsequently made nine additional payments totalling $8,696.00. Thereafter, he defaulted in the payments, and appellee instituted an action in replevin in the Court of Common Pleas of Washington County. However, appellant voluntarily relinquished the tractor.

After receiving possession, appellee performed repairs totalling $2,479.60 and eventually resold the tractor for $26,-000.00. Upon crediting appellant with the receipts from the sale of the tractor, appellee filed an action to recover an alleged deficiency of $2,135.70. The case was tried before a panel of arbitrators and on January 31, 1977, an award was entered in favor of appellee in the amount of $2,135.70. Appellant filed an appeal to the Court of Common Pleas of Washington County, and on April 24, 1978, a non-jury trial was held in that court. On May 5, 1978, the Honorable Charles G. Sweet, President Judge of the Court of Common Pleas of Washington County, returned a verdict essentially affirming the decision of the panel of arbitrators, and awarding appellee a judgment in the amount of $2,000.00. Exceptions were filed and argued in an en banc court which affirmed the verdict of the trial judge. It is from that order that appellant appeals.

■ Appellant's first assignment is that the trial court erred in permitting appellee to recover the costs of repairs made to the tractor after repossession but prior to resale. It is appellant's contention that because the costs of repair are not included in § 27 of the Motor Vehicle Sales Finance Act, Act of June 28, 1947, P.L. 1110, § 27, *as amended*, 69 P.S. § 627 (relating to recoverable items in an action for a deficiency judgment), such costs are therefore impliedly excluded as a recoverable item.[1] We disagree and conclude

---

1. Section 27 provides as follows:
    "*If the proceeds of the resale mentioned in section twenty-six above are not sufficient to defray the expenses thereof, the expenses of retaking and storing the motor vehicle to which the seller or holder may be entitled and the net balance due upon the contract, plus the amount of any accrued default charges authoriz-*

that reasonable costs of repair performed subsequent to repossession and prior to resale are properly chargeable to the buyer and are recoverable in an action for a deficiency judgment.

In *Mayo Motors v. Lindenmuth*, 32 Leh.L.J. 55 (1966), the court was confronted with a petition to open a default judgment entered when the defendants failed to maintain timely payments upon their mobile home. In holding that the judgment should be opened, the court noted in dicta that the defendants had a colorable defense, in that plaintiff had included in the default judgment the costs of repair performed subsequent to repossession but prior to resale. In holding that the failure by the General Assembly to include the costs of repair in the items of recoverable charges under § 27 rested upon sound policy, the court reasoned as follows:

"When the seller repairs a vehicle—he improves it for resale—and recovers a higher amount on account of his loss. If plaintiff's theory prevailed, the seller would not only recover the repairs upon resale, but also in his deficiency judgment—a double recovery. The recoverable items under Section 27 are the expenses of the resale, the expenses of retaking and storing the vehicle, the net balance due upon the contract plus the amount of any accrued default charges. It is a strained argument that repair costs should be included under 'the net balance due upon the contract' when other items like the expense of retaking and storing the vehicle are expressly mentioned.

*ed by this act*, the seller or holder may recover the deficiency from the buyer or from any one who has succeeded to the obligations of the buyer: Provided, That the buyer may have the reasonable value of the motor vehicle at the time of resale, determined in any action or proceeding brought by the seller or holder to recover the deficiency, the resale price being prima facie but not conclusive evidence, of such reasonable value and the said reasonable value, as determined, or the resale price, whichever shall be higher, shall be credited to the buyer on account of his indebtedness. In every action or proceeding for a deficiency the buyer may have the reasonableness of the expense of retaking and storing the motor vehicle determined. Nothing contained in this section shall apply to a deficiency on a resale which was held prior to the effective date of this act." (Emphasis added).

'Repairs' are recoverable from the buyer under Sections 23, 24 and 25, to make the seller whole but under 27, the resale accomplishes this." *Id.* at 66–67.

We are constrained to disagree with this conclusion, for we fail to understand how a double recovery would be effected by permitting the holder to include the costs of repair in the deficiency judgment. Contrary to the court's analysis, the holder of a conditional sales contract does not recover the costs of repair when he resells the repossessed collateral, since the buyer must be credited with all proceeds from the resale. The recovery of the costs of repair is a solitary one, occurring at the time the holder recovers the deficiency judgment.

Moreover, we can perceive a great benefit that may accrue to both the holder and the buyer if the holder were permitted to repair the collateral and recover such cost from the buyer. The facts of the *Lindenmuth* case are illustrative of this benefit. In *Lindenmuth*, the defendants owed $2,520.05 on the mobile home at the time of the repossession, but the appraised value of the home was only $1,300.00. Subsequent to repossession and prior to resale, plaintiff undertook various repairs totalling $706.90 and ultimately resold the mobile home for $2,500.00. Thus, by expending $706.90 for repairs, plaintiff increased its value for resale by $1,200.00 and thereby diminished the size of the deficiency that defendants were required to pay by that amount. In return, it would only have been equitable to have permitted plaintiff to charge defendants with the costs of repair.

Not only do we fail to perceive any type of "double recovery" accruing to a holder, but if a buyer is permitted to reap the benefits of any repair items in the form of a higher resale value and the concomitant diminution in the amount of the deficiency judgment (or an increased surplus if the resale price plus the credits to which the buyer is entitled exceeds the amount of the holder's claim) without being required to account to the holder for the costs of repair, the inequities would, in actuality, fall on the side of the buyer. In fact, the *Lindenmuth* court recognized the fallacy of its

double recovery analysis in the subsequent trial on the merits of the case.

"We are aware that in the opinion disposing of the motion to open the judgment we used language to the effect that it appeared from the letter then in evidence (but not at trial) that the cost of repairs was included in the determination of defendants' deficiency. Plaintiff in those proceedings argued otherwise but we in the exercise of an equitable discretion opened the judgment to give defendants their day in court. We believe our statement that to permit the judgment to stand would allow the plaintiff a double recovery of the repairs was in error.

.   .   .   We have reservations about the present wording of Section 27 of the Motor Vehicle Sales Finance Act but we are also convinced that to hold that the deficiency judgment includes the repair item when in fact such repairs increased the credit due defendants would be inequitable and unintended by the framers of the Act. In a sense we are talking semantics. If repairs are made and then deducted from the sales price, can it be said that the balance owing includes the cost of repairs? We think it pure foolishness to suggest as did defendants' counsel at trial that if the repairs had not been taken out of the sales proceeds, there would have been a greater amount to credit to defendants' account. Was the plaintiff then to bear the cost of repairs without reimbursement? The defendants are in better straits now as a result of the repairs having been made.

We believe Section 27 could be more explicit as to the disposition of a repair item and we regret that apparently the section has not been judicially interpreted before this. The realization that the repairs increased the value of the mobile home from $1,300 to $2,500 to the benefit of the defendants causes us to have second thoughts as to several statements made in our earlier opinion. Logic and common sense demanded the reappraisal made herein."

*Mayo Motors v. Lindenmuth*, 33 Leh.L.J. 73, 81–82 (1968).

Applying the reasoning of the court's second opinion in *Lindenmuth*, we agree that although not specifically enunciated in § 27, reasonable costs of repair are recoverable in a proceeding for a deficiency judgment under that provision. In so ruling, we are guided by certain precepts. First is the legislative intent enunciated in § 2 of the Act to eliminate "nefarious, unscrupulous and improper practices in the financing of the sale of motor vehicles . . . which are unjustifiably detrimental to the consumer and inimical to the public welfare." Act of June 28, 1947, *supra*, § 2, 69 P.S. § 602. We find nothing "nefarious, unscrupulous and improper" in a holder making *reasonable* repairs to a chattel when such repairs will effect the desired goal of reselling the property and diminishing the amount of a resultant deficiency judgment. We note, however, that as in the case of the § 27 items for retaking and storing the chattel, the buyer may contest the reasonableness of any repairs.[2]

Second, we are guided by the rule of statutory construction "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable."[3] 1

[2] The trial court concluded, and the record fully establishes, that the repairs undertaken by appellee were reasonable. The repairs that were made were performed at the request of the purchaser of the tractor and included various items that were not included on the tractor when it was originally purchased. One item, a "Jake Brake", had been installed on the tractor by appellant after the original purchase, but was removed by him prior to relinquishing possession in response to appellee's replevin action in January of 1976. Appellee's witness testified that the tractor had been offered at a public sale, but no bids were tendered. He further testified that in his assessment, the ultimate purchaser would not have been willing to pay $26,000.00 if the repairs had not been made.

[3] Appellant contends that the specific allowance for recovery of various items under § 27 evidences a legislative intent to exclude all other items under the doctrine "expressio unius est exclusio alterious." While Pennsylvania courts have applied this maxim in interpreting various statutory provisions, *see, e. g., Pane v. Department of Highways*, 422 Pa. 489, 222 A.2d 913 (1966); *Cali v. City of Philadelphia*, 406 Pa. 290, 177 A.2d 824 (1962), it is intended as a shining light that illuminates the path to proper construction and should not become a blinding beacon that restricts the court in the implementation of a clear legislative intent. *See Consumers Education and Protective Assoc. v. Nolan*, 470 Pa. 372, 368 A.2d 675 (1977); *Knecht*

Pa.C.S. § 1922(1). Such a result would occur under § 27 if a repossessing holder was hampered with an inability to perform reasonable repairs prior to resale. In that case, the holder would be confronted with two choices: (1) to attempt a sale of the chattel in its unrepaired state to the possible detriment of himself and the defaulting buyer; or (2) to repair the chattel at his own expense in an attempt to facilitate its resale and thus permit the buyer to retain the benefit of the repairs without reimbursement to the holder. Such a result would, in our opinion, be "absurd" and "unreasonable", and we fail to ascribe such an intent to the General Assembly.

Third, we note the inconsistent results that would occur within various provisions of the Act if the holder could not recover the costs of repair under § 27. Section 24 of the Motor Vehicle Sales Finance Act, Act of June 28, 1947, *supra*, 69 P.S. § 624, provides that if a buyer is in default under a conditional sales contract for a period in excess of fifteen (15) days and the holder effects repossession of the vehicle, the holder may make any reasonable repairs, and if the buyer elects to reinstate the contract by paying all past installments, he must also reimburse the holder for the cost of the repairs. Although § 27 does not specifically list such costs as an item of recovery, it would be anomalous to permit recovery of the costs of repair in the instance in which the buyer elects to reinstate the contract under § 24 but to deny such recovery when the holder undertakes repairs and the buyer elects not to reinstate the contract thus forcing the holder to resell the collateral under § 26 and pursue an action for a deficiency judgment under § 27.

Finally, we note that the Pennsylvania Uniform Commercial Code, Act of April 6, 1953, P.L. 3, § 9–504, *as reenacted*, 12A P.S. § 9–504(4), passed subsequent to the Motor Vehicle Sales Finance Act, permits a secured party to collect the costs of preparing the chattel for resale when the property has been repossessed. Therefore, we believe the legislative intent clearly is to permit the recovery of such items.

*v. Medical Service Ass'n of Pennsylvania, Inc.*, 186 Pa.Super. 456, 143 A.2d 820 (1958).

Appellant's second contention is that the court failed to conclude that appellee's action in retaining the collateral and taking title in its own name prior to resale effected an accord and satisfaction thereby discharging appellant's obligation to account for any deficiency.

First, we note that appellant failed to include this claim in his complaint and in his exceptions to the court's initial decree as required by Pa.R.C.P. No. 1038(d), and therefore the claim has been waived. Moreover, assuming non-waiver, we find appellant's contention to be without merit in that § 26 of the Motor Vehicle Sales Finance Act establishes such an accord and satisfaction only if the holder elects to retain the collateral as opposed to reselling it at a public or private sale as appellee did in the instant case. *See also* Act of April 6, 1953, *supra*, § 9–503, 12A P.S. § 9–503(2) (providing for an accord and satisfaction only if the holder submits a written proposal to the buyer to retain the collateral in satisfaction of the obligation and the buyer or other secured parties fail to object within thirty days). Therefore, we can find no error in the action of the trial court.

The order of the court is affirmed.