[No. 5651.]

THE PEOPLE EX REL. PARKS v. CORNFORTH.

1. Offices and Officers — Resignation — Lieutenant Governor — President Pro Tem. of Senate.

Where the governor resigned his office during the session of the legislature and the powers and duties of the office thereby devolved upon the lieutenant governor for the balance of the term, the president pro tempore of the senate did not become lieutenant governor de jure, but he became entitled to perform the duties and receive the emoluments of lieutenant governor only so long as he was president pro tem. of the senate, and where at the end of the session of the legislature the senate elected another president pro tem., the former president pro tem. no longer had a right to perform the duties and receive the emoluments of lieutenant governor, but such duties and emoluments devolved upon his successor.

2. Same—Estoppel.

Where, during the session of the legislature, the governor resigned and the duties of his office devolved upon the lieutenant governor, and the duties and emoluments of the office of lieutenant governor devolved upon the president pro tem. of the senate, and at the end of the session the senate elected another president pro tem., the fact that such succeeding president pro tem. by his acts recognized his predecessor as lieutenant governor could not make such predecessor lieutenant governor de jure nor estop the succeeding president pro tem. from asserting his right to perform the duties and receive the emoluments of lieutenant governor.

*Original Proceedings by Quo Warranto.*

Mr. JOHN M. WALDRON and Mr. FRED W. PARKS, for relator.

Mr. N. C. MILLER, attorney general, Mr. HORACE G. LUNT, Messrs. McALLISTER & GANDY and Mr. ORLANDO B. WILCOX, for respondent.

Mr. JUSTICE GUNTER delivered the opinion of the court.

Original proceeding in the nature of *quo warranto.* The information alleges that respondent usurps the office of lieutenant governor of this state, asks a judgment of ouster, and that the relator be declared entitled to discharge the duties and receive the emoluments of that office. The facts are: March

17, 1905, James H. Peabody, then governor for the term ending second Tuesday in January, 1907, resigned, and Jesse F. McDonald, then lieutenant governor, qualified as governor and since has acted as such. March 18, 1905, respondent, a senator for the term ending first Wednesday in December, 1906, and president *pro tem.* of the senate, qualified as lieutenant governor and since has acted as such. April 3, at the close of the regular session of the legislature beginning January 4, 1905, relator was elected president *pro tem.* to succeed respondent. Respondent is still a senator. There is no controversy but that respondent as president *pro tem.* at the time the powers and duties of governor, through the resignation of Governor Peabody, devolved upon Lieutenant Governor McDonald, was entitled to perform the duties of lieutenant governor; the question is whether such right ended with the election of relator as president *pro tem.*

Relator insists that the duties in question are legally attached to the holder of the office of president *pro tem.* of the senate, and whenever the term of office of such president expires such duties pass to his successor in office.

Respondent contends that the holder of the office of president *pro tem.* at the time the lieutenant governor legally assumes the duties of governor, through a resignation of the governor, becomes legally invested with the title of lieutenant governor and empowered to discharge the duties and receive the emoluments thereof for the remainder of the term for which the governor and lieutenant governor were respectively elected, and that this is true regardless of the fact that his term of office as such president *pro tem.* as well as senator may both expire before the termination of the residue of the gubernatorial term.

1.  This question is determined by the construction of the following section of our state constitution:

"In case of the death, impeachment or conviction of felony or infamous misdemeanor, failure to qualify, resignation, absence from the state or disability of the governor, the powers, duties and emoluments of the office, for the residue of the term or until the disability be removed, shall devolve upon the lieutenant governor."—Article IV, sec. 13.

"The lieutenant governor shall be president of the senate, and shall vote only when the senate is equally divided. In case of the absence, impeachment or disqualification from any cause of the lieutenant governor, or when he shall hold the office of governor, then the president *pro tempore* of the senate shall perform the duties of the lieutenant governor, until the vacancy is filled or the disability removed."—Article IV, sec. 14.

"The senate shall, at the beginning and close of each regular session, and at such other times as may be necessary, elect one of its members president *pro tempore*."—Article IV, sec. 10.

These sections read together provide that the senate shall, at the beginning and close of each regular session, and at such other times as may be necessary, elect one of its members president *pro tem*. and that in case of the absence, impeachment, or disqualification from any cause of the lieutenant governor, or when the powers, duties and emoluments of the office of governor devolve upon the lieutenant governor through death, impeachment or conviction of felony or infamous misdemeanor, failure to qualify, resignation, absence from the state, or disability of the governor, the president *pro tem*. shall perform the duties of lieutenant governor until the cause preventing the lieutenant governor from discharging his official duties is removed.

It thus appears that if the lieutenant governor fails to perform his duties for some temporary cause, as absence or sickness, the constitution in terms provides that while such condition exists his duties shall be performed by the president *pro tem.* It is conceded by counsel for respondent that in such temporary contingency the president *pro tem.* does not become the lieutenant governor. The same language is used in devolving duties on the president *pro tem.* in the event the lieutenant governor is unable to perform his duties through those of the governor devolving upon him from some permanent cause, as in this case, resignation of the governor.

If the framers of our constitution had intended that the president *pro tem.* of the senate should become lieutenant governor *de jure* in the contingency under consideration they could easily have said so. They have not so provided; they have simply said that if for some permanent cause the lieutenant governor fails to discharge his official duties, that they shall be performed while such condition obtains by the president *pro tem.* of the senate as such.

The question under consideration was ruled in *State v. Heller,* 63 New Jersey Law 105; 42 Atlantic 155. Griggs, the governor of New Jersey, resigned before the expiration of his term. Vorhees, the then president of the state senate, qualified as his successor. Later, before the expiration of the time for which Griggs had been elected, Vorhees resigned as a member of the state senate. Immediately the speaker of the house qualified as governor, contending that the resignation of Vorhees as state senator terminated his right to officiate as governor. Vorhees claimed that having been the legal successor of Griggs as governor at the time of the resignation he thereby became the governor *de jure* for the remainder of the unexpired term of Griggs as governor, regardless

of the expiration of his term as state senator. The question was determined by the construction of the following provision of the New Jersey constitution:

"In case of the * * * resignation * * * from office of the governor, the powers, duties and emoluments of the office shall devolve upon the president of the senate, and in case of his * * * resignation * * * then upon the speaker of the house of assembly, for the time being, until another governor shall be elected and qualified."

The court in ruling said: "In my judgment the framers of the constitution meant simply what they said—that in case the governor resigned, the president of the senate, as such, should have the powers and perform the duties of the office. Foster M. Vorhees did not become governor upon the resignation of Governor Griggs. He still continued to be a senator and president of the senate. He could not resign the office of governor which he never held. When he resigned and vacated the office of senator he ceased to be president of the senate and could no longer exercise the functions pertaining to the executive department. Therefore upon his resignation as senator the powers, duties and emoluments of the office devolved upon David O. Watkins, the speaker of the house of assembly. He is *de jure* the speaker of the house and of right as such speaker exercises the executive powers. He is not governor *de jure* or *de facto* in the constitutional sense of that term."

On page 157 the court further said: "It [New Jersey constitution] declares that the powers, duties and emoluments of the office [governor] shall devolve on the president of the senate. It does not confer upon him the title of the office. The president of the senate exercises the powers of the governor; the president of the senate performs the duties of the governor; the president of the senate re-

ceives the emoluments of that office. He is still president of the senate, with the added duties required of the chief executive of the state imposed upon him. There is no language in the constitution from which it can be reasonably inferred that his office of president of the senate was to be vacated. He retains his office of senator, and as president of the senate, and not as governor, he exercises the added powers and performs the super-imposed duties."

. The following cases are of service in construing the language under consideration, "then the president *pro tempore* shall perform the duties of the lieutenant governor, until the vacancy is filled or the disability removed."—Section 13, *supra; Carr v. Wilson,* 9 S. E. (W. Va.) 31, 33; *Tieman v. Haw,* 49 Iowa 315; *State v. Byrne,* 73 N. W. (Wis.) 321.

Such rulings upon similar provisions to some extent support the conclusion reached in *State v. Heller, supra.*

See also 14 A. & E. Enc. of Law (2d ed.), 1108.

The principle of corporate law, which in effect declares that the right to hold a given corporate office is dependent upon a continued ownership of corporate stock—*Oudin v. Conlan,* 75 Pac. (Wash.) 798—by analogy lends strength to the conclusion in *State v. Heller.*

We conclude that respondent did not become lieutenant governor *de jure* by the duties of governor devolving upon Lieutenant Governor McDonald through the resignation of Governor Peabody, and that by the election of relator as president *pro tem.* respondent, being no longer president *pro tem.,* lost his right to perform the duties of lieutenant governor, and relator by such election became entitled to perform the duties of such office.

2. As *contra* the conclusion we have reached respondent has cited *Merriman v. Clinch,* 6 Blatchford 5; *People ex rel. Church v. Hopkins,* 55 N. Y. 74; *Chatterton v. Grant,* 73 Pac. (Wyo.) 470; *Chadwick v. Earhart,* 11 Oregon 389, 4 Pac. 1180.

In *Merriman v. Clinch,* King, while holding the office of collector of customs, appointed Clinch as his deputy. King died, and Clinch, for some time thereafter under his appointment by King, and as authorized by the statute, performed the duties of the office of collector. The administrator of King sued to recover of Clinch the fees and salary of the office of collector of customs which had come into his hands as deputy collector after the death of King and before his successor was appointed. The court held that the administrator had no claim upon the fees and salary of the office of collector accruing after the death of King.

In *Church v. Hopkins,* Miller, superintendent of the insurance department of the state of New York, resigned before the expiration of his term. Church had been appointed by Miller deputy superintendent, and was such at the time of his resignation. Church, under his appointment as deputy, and as authorized by statute, performed all the duties of superintendent. He sued to recover the salary as superintendent during the time he acted as such. The court held him entitled to recover.

In *State ex rel. Chatterton v. Grant,* Chatterton, secretary of state of Wyoming, became acting governor of that state on the death of the governor; he continued also to perform the duties of secretary of state; he sued to recover salary as secretary of state and governor; he was permitted to recover.

In *Chadwick v. Earhart,* Grover resigned as governor before the expiration of his term of office; Chadwick, secretary of state for the same term, qual-

ified as governor, and discharged the duties of that office and secretary of state until the expiration of the term for which he had been elected secretary of state, and the duties of governor for two days after the expiration of his term as secretary of state. A new governor and secretary of state had been elected; the secretary of staté qualified, but exactly when does not appear, and the new governor failed to qualify during the first two days of his term, and during which time Chadwick, although his term as secretary of state had expired, continued to perform the duties of governor. Chadwick sued to recover the salary of governor for the entire time of his service as such, including the two days after the expiration of his term as secretary of state. The court held him entitled to recover. The constitution of Oregon involved in the decision was that in the case of the removal of the governor from office or "of his   *   *   *   res-· ignation   *   *   *   the same shall devolve on the secretary of state." The conclusion of the court that Chadwick was entitled to recover for the time he performed the duties of governor before the expiration of his term as secretary of state is not in conflict with our ruling here. The part of the decision holding that he was entitled to recover the salary of governor · for the two days after the expiration of his term of office as secretary of state is against our conclusion here. The weight of the decision upon the latter point is to some extent impaired by the fact that the question received no attention in the brief of counsel for Chadwick and but slight mention in the brief of adverse counsel. We decline, however, to follow this case as to the latter point decided therein for the reasons given in the eariler part of this opinion.

3.   1 Mills' Ann. Stats., sec. 1767, provides: "Whenever by the impeachment of the governor, his removal from office, death or resignation, or absence

from the state, the powers and duties of his office shall devolve upon the lieutenant governor, the salary of the governor shall cease, and the same shall be received by the lieutenant governor as a full compensation for his services until such disability shall cease; and during the time that the lieutenant governor shall act as governor the duties and powers of the lieutenant governor shall devolve upon the president of the senate *pro tem.*, who shall receive the salary of the lieutenant governor during such term of service.''

This statute, enacted shortly after the adoption of the constitution, respondent says should be availed of in construing sections of the constitution under consideraion, and if so availed of shows by the use of the words ''duties and powers of lieutenant governor shall devolve upon the president of the senate *pro tem.*'' that it was the intention of the framers of the constitution that the president *pro tem.* should become *de jure* lieutenant governor. Such words are not so construed.

The constitution of Nevada provides that when a vacancy occurs in the office of governor through any one of certain contingencies ''the powers and the duties of the office shall devolve upon the lieutenant governor for the residue of the term, or until the disability shall cease.''

In *State v. Sadler,* 23 Nevada 356, 47 Pac. 450, in construing this provision the court said: ''If a vacancy occurs in the office of governor the powers and duties of the office devolve upon the lieutenant governor, but there is no vacancy created thereby in the office of lieutenant governor. The officer remains lieutenant governor, but invested with the powers and duties of governor.''

The provisions of the California constitution are identical in terms with those of Nevada, and in *People*

*v. Budd,* 114 Cal. 168, 45 Pac. 1060, 34 L. R. A. 46, the court said: "Under such circumstances it would hardly be contended that when the powers and duties of the governor devolved upon the lieutenant governor the latter thereby becomes governor, and can appoint a lieutenant governor; nor do I think it would be contended that when the president *pro tem.* of the senate acts as governor he can appoint a person to fill the vacancy in the office of the lieutenant governor. If he could he would then appoint himself out of office and it would be his duty to do so."

See also *State v. McBride,* 70 Pac. (Wash.) 26; *State v. Stearns,* 75 N. W. 211.

The statute does not, we think, enlarge the language of the constitution except as it provides for payment of the salary of the lieutenant governor to the president *pro tem.,* but even if the language so used has the contended effect it would not control what appears to us to be the clear meaning of the terms used in the constitution.

4.  It is contended that by certain acts officers of the executive department of the state government recognized respondent as lieutenant governor, and that this should have weight in construing the constitutional provisions in question. If there were the acts of recognition relied on in a doubtful question of construction they should be considered, but not to control the plain terms of the constitution.

5.  It is further contended that certain acts of the relator whereby it is said he impliedly recognized respondent as lieutenant governor should estop him from making the contention he here presses. No act of the relator could compel us to declare respondent lieutenant governor *de jure* when under the constitution he is not so.

Judgment will be entered enjoining respondent from performing the duties of lieutenant governor

of this state, and declaring relator entitled as president *pro tem.* of the senate to perform such duties. Decision by the Court *en banc.*