**John A. LAWLESS, State Representative 150th Legislative District, Charles A. Pascal, Jr., and Joseph H. Wiedemer, Petitioners,**

v.

**Robert C. JUBELIRER, Lt. Governor of Pennsylvania, State Senator, 30th Senatorial District and President Pro Tempore of the Pennsylvania Senate, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 2001.

Decided Jan. 4, 2002.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Gerald C. Grimaud, Tunkhannock, for petitioners.

Linda J. Shorey and John P. Krill, Jr., Harrisburg and Robert L. Byer, Pittsburgh, for respondent.

Before DOYLE, President Judge, COLINS, J., McGINLEY, J., SMITH, J., FRIEDMAN, J., KELLEY, J., and LEADBETTER, J.

PER CURIAM.

AND NOW, this 4th day of January 2002, the majority and dissenting opinions filed on Friday, December 28, 2001, in the above-captioned matter are hereby withdrawn and vacated.

In their stead, the attached majority and dissenting opinions and orders are filed as of this date.

DOYLE, President Judge.[1]

Before this Court[2] in our original jurisdiction are preliminary objections filed by Robert C. Jubelirer, the Lieutenant Governor of the Commonwealth of Pennsylvania and a State Senator elected from Pennsylvania's 30th Senatorial District, who is as well the President *pro tempore* of the Pennsylvania Senate (Respondent), to a petition for review in the nature of a request for declaratory judgment filed by State Representative John A. Lawless, Charles A. Pascal Jr., and Joseph H. Wiedemer (collectively Petitioners). Petitioners Lawless, Pascal and Wiedemer are residents of Pennsylvania (Wiedemer in Pennsylvania's 30th Senatorial District) as well as electors, voters and taxpayers.[3]

In their petition, Petitioners allege that Respondent has been a member of the Senate since 1974 and has been its President *pro tempore* for approximately fifteen years.[4] They further aver that on October 5, 2001, former Governor Tom Ridge resigned his position to assume the federal post of Director of the Office of Homeland Security in Washington, D.C. On that same date, then Lieutenant Governor Mark Schweiker was sworn in as Governor

1. The decision in this case was reached prior to the date that President Judge Doyle assumed the status of senior judge on January 1, 2002.

2. The Court considered this case as one of significant public importance, and, accordingly, we granted the application of both parties for an advanced briefing schedule and expedited disposition.

3. The Court recognizes the appearance of amici, the Commonwealth of Pennsylvania, by the Attorney General of Pennsylvania, Mike Fisher, and Senator Vincent Fumo, and commends them for their helpful insights in resolving this important matter.

The Attorney General addressed and argued the basic constitutional issues, advocating that the Pennsylvania Constitution specifically provides that a President *pro tempore* who succeeds to the post of Lieutenant Governor nonetheless retains his seat in the Senate and that this conclusion is compelled by a proper reading of the Constitution itself, from the historical background of the debates which led to the adoption of the 1874 Pennsylvania Constitution and by reference to similar decisions by the Supreme Court of Minnesota, *Minnesota ex. rel. Marr v. Stearns,* 72 Minn. 200, 75 N.W. 210 (1898), *rev'd on other grounds,* 179 U.S. 223, 21 S.Ct. 73, 45 L.Ed. 162 (1900) and the Supreme Court of Wyoming, *Wyoming ex. rel. Chatterton v. Grant,* 12 Wyo. 1, 73 P. 470 (1903).

Senator Fumo, while offering no position relative to the underlying merits of the constitutional issues, urged the Court to accept jurisdiction to determine those issues because they are not nonjusticiable political questions and are presented by petitioners who have standing to bring them to this Court for resolution.

4. We note that this allegation of the Petitioners did not account for the period of time from late 1992 to early 1994 when Senator Robert Mellow was the President *pro tempore* of the Senate.

of Pennsylvania, thus vacating the office of Lieutenant Governor. Also on that date, Respondent Jubelirer was sworn in as Lieutenant Governor in accordance with Article IV, Section 14 of the Pennsylvania Constitution of 1968 (Constitution), which provides as follows:

§ 14. **Vacancy in office of Lieutenant Governor**

In case of the death, conviction on impeachment, failure to qualify or resignation of the Lieutenant Governor, or in case he should become Governor under the preceding section, the President *pro tempore* of the Senate shall become Lieutenant Governor for the remainder of the term. In case of the disability of the Lieutenant Governor, the powers, duties and emoluments of the office shall devolve upon the President *pro tempore* of the Senate until the disability is removed. Should there be no Lieutenant Governor, the President *pro tempore* of the Senate shall become Governor if a vacancy shall occur in the office of Governor and in case of the disability of the Governor, the powers, duties and emoluments of the office shall devolve upon the President *pro tempore* of the Senate until the disability is removed. His seat as Senator shall become vacant whenever he shall become Governor and shall be filled by election as any other vacancy in the Senate.

In **count one** of the four-count petition, petitioners recognize that Article IV, Section 14 of the Constitution requires the President *pro tempore* of the Senate to assume the position of Lieutenant Governor at the time the existing Lieutenant Governor becomes Governor. They assert, however, that under Article IV, Section 6 of the Constitution Respondent is prohibited "from maintaining his office in the Senate" while occupying the post of Lieutenant Governor. (Petition for Re-

view ¶ 19). Article IV, Section 6 pertinently states:

No member of Congress **or person holding any office** ... under the United States or this Commonwealth shall exercise the office of Governor, Lieutenant Governor or Attorney General.

(emphasis added). Petitioners argue, succinctly, that Respondent is prohibited from holding the office of Senator while he is at the same time the Lieutenant Governor. Petitioners assert further that, under Article II, Section 8 of the Constitution, Respondent is also prohibited from collecting an increased salary as Lieutenant Governor and that "the Lt. Governor's annual salary ... well exceeds his annual salary as Senator and President pro tempore of the Senate combined." (Petition for Review ¶ 21). Article II, Section 8 pertinently states:

The members of the General Assembly shall receive such salary and mileage for regular and special sessions as shall be fixed by law, and no other compensation whatever, whether for service upon committee or otherwise. No member of either House shall during the term for which he may have been elected, receive any increase of salary, or mileage, under any law passed during such term.

Finally, Petitioners maintain that the Constitution does not authorize a Lieutenant Governor, who is a member of the Executive branch, to exercise the duties and powers of the President *pro tempore* of the Senate, who is a member of the Legislative branch. Petitioners contend that the "people of Pennsylvania have a right to a Lt. Governor without loyalties divided between the Executive and Legislative branches." (Petition for Review ¶ 24).

Petitioners, in a prayer for relief repeated for each count, ask the Court to declare (1) that Respondent may not continue to hold the office of Senator and

President *pro tempore,* (2) that the senatorial seat for the 30th Senatorial District is vacant as a matter of law, and (3) that a special election is needed to fill the seat.

**Count two** of the petition is based on the concept of separation of powers. Petitioners aver that under Article II, Section 6 as well as Article IV, Section 6, it is unconstitutional for Respondent to exercise the duties of Senator, President *pro tempore* and Lieutenant Governor contemporaneously, and that to permit such an action to occur is against the public interest and creates conflicts of interest, divided loyalties, ethical issues and a comingling of duties. Article II, Section 6 provides as follows:

> No Senator or Representative shall, during the time for which he was elected, be appointed to any civil office under this Commonwealth to which a salary, fee or perquisite is attached. No member of Congress or other person holding any office (except of attorney-at-law or in the national guard or in a reserve component of the armed forces of the United States) under the United States or this Commonwealth to which a salary, fee or perquisite is attached shall be a member of either House during his continuance in office.

**Count three** of the petition is based on Article IV, Section 2 of the Constitution, which vests the supreme executive power in the Governor. In this count Petitioners aver that, as a Senator, Respondent has the duty to advise the Governor on judicial appointments, *see* Article V, Section 13(b) and Article IV, Section 8(b), and to approve or disapprove the Governor's choices for various cabinet positions and other like offices. Further, the Lieutenant Governor, who chairs the Board of Pardons, authorizes three gubernatorial appointments to that board subject to Senate approval. Petitioners aver that all of the various duties that Respondent now has give him power that "rivals that of the Governor" and that he "now essentially controls Pennsylvania's Executive branch." (Petition for Review ¶ 43, 46).

Finally, in **count four** of the petition, Petitioners aver that, as Lieutenant Governor, Respondent is responsible for Pennsylvania's Emergency Management Program and that his senatorial duties, which take time from his duties as the Lieutenant Governor, prevent him from being able to give his maximum time and attention to the emergency management duties.

Respondent has raised three preliminary objections to the petition, which we will address *seriatim.*

## STANDING

▮ Respondent first asserts that the named Petitioners lack standing to bring this action.

▮ In order to meet the standing requirement, those bringing an action generally must demonstrate a substantial, direct and immediate interest in the controversy. *William Penn Parking Garage Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). An interest is substantial if there is a discernable adverse effect to an interest other than that of the general citizenry. *Id.* at 195, 346 A.2d at 282. It is direct if the petitioner can show a harm to his interest. *Id.* It is immediate if it is not a remote consequence of the judgment. *Id.* at 197, 346 A.2d at 283.

▮ There is, however, a narrow exception to the general requirements of standing where a citizen may challenge an action that would otherwise go unchallenged in the courts. This legal precept is often applied where persons also assert standing on the basis that they are taxpayers and, thus, have an interest in the public fisc. In such a case, to be granted standing,

petitioners must demonstrate that (1) the governmental action would otherwise go unchallenged, (2) those directly and immediately affected by the governmental action are not inclined to challenge it, (3) judicial relief is appropriate, (4) there is no redress through other channels, and (5) no other persons are better suited to assert the claim. *Consumer Party v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986). It is under *Consumer Party* that Petitioners maintain that they have standing.

Examining the five-part test enunciated in *Consumer Party*, we conclude that Petitioners do have standing. First, we believe that there is a real possibility that the issue called into question might otherwise go unchallenged. Respondent's colleagues in the Senate may not wish to raise the issue since those of his own party may benefit from his increased responsibilities and those of the other major party will have need to work with him in both of his capacities. For similar reasons, those legislators directly and immediately affected by his concurrent occupation of the three positions may benefit more, both personally and politically, by not challenging his authority.

Next, we believe that judicial relief is appropriate to challenge the constitutionality of this issue of first impression, challenging an individual's right to occupy the positions of Lieutenant Governor, President *pro tempore* of the Senate, and Senator simultaneously, and, if warranted, declare that a need for a special election is present. Additionally, redress is not available elsewhere, and no persons who are better situated to commence this lawsuit have even been suggested.

■ We also conclude that Petitioners Lawless and Pascal have an additional basis to assert standing under our holding in *Bergdoll v. Kane*, 694 A.2d 1155, (Pa. Cmwlth.1997), *aff'd*, 557 Pa. 72, 731 A.2d 1261 (1999), wherein we granted standing to individuals who had taken an oath pledging to defend Pennsylvania's Constitution. Representative Lawless, as a member of the General Assembly, and Mr. Pascal, as a member of the Board of Directors of the Leechberg Area School District, have asserted that they have each taken an oath of office requiring them to do so. Thus, we find an additional reason to conclude that they have standing. Accordingly, the preliminary objection to standing is overruled.[5]

## SEPARATION OF POWERS DOCTRINE/THE POLITICAL QUESTION DOCTRINE

■ Respondent asserts that the central issue before the Court is not justiciable because it is a political question.

■ The political question doctrine is a discretionary form of judicial abstention derived from the separation of powers doctrine. It should only be invoked by a court when considering matters that are textually committed to a co-equal branch of government **and** which do not involve another branch of government acting outside its scope of constitutional authority. *Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698 (1977). Most important, the political question doctrine of abstention is a matter of judicial discretion and its use is controlled by the circumstances and facts presented in a particular case. *Jubelirer v. Singel*, 162 Pa.Cmwlth. 55, 638 A.2d 352 (1994) (particularly relevant to this case was this Court's prior decision to reject

---

**5.** We are not persuaded that any of the Petitioners gain standing via their status as voters or under the right to petition the government

for redress. *See* Article I, Section 20 of the Constitution.

the application of the separation of powers doctrine and consider whether or not a Senator-elect was permitted to vote on his own seating—a matter otherwise textually committed to the legislative branch of government).

Our state Supreme Court and this Court have adopted the standards enunciated in the seminal case of *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), in order to determine whether an issue is justiciable. *See, e.g., Jubelirer; Sweeney* In *Jubelirer,* we quoted *Baker* as follows:

> It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question.... Prominent on the surface of any case held to involve a political question is found *a textually demonstrable constitutional commitment of the issue to a coordinate political department;* or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Jubelirer,* 638 A.2d at 358 (quoting *Baker,* 369 U.S. at 217, 82 S.Ct. 691) (emphasis in original). Further, however, *Sweeney* recognized that, in situations where there is an allegation that another branch of government is acting beyond the scope of its constitutionally circumscribed authority, judicial review of the matter is especially appropriate.

While the argument of nonjusticiability has a certain appeal, we conclude that it does not apply to this case, which does not contemplate a "garden variety" political question, but rather concerns vital issues with unique constitutional underpinnings. Here, the Court is presented with two issues of basic constitutional law, *viz.,* whether a person who becomes Lieutenant Governor pursuant to Article IV, Section 14 may concurrently hold the position of State Senator, and whether a person who becomes Lieutenant Governor, and therefore is President of the Senate, may also hold the position of President *pro tempore* of the Senate. Accordingly, we are not asked to decide an issue of the qualifications of an individual member of the Senate under Article II, Section 5, which is clearly within the legislative purview. Instead, we are called upon to confront compelling issues that undoubtedly require a studied and thoughtful interpretation of the relevant Constitutional provisions, and only the Courts may engage in such an exegesis. We so held in *Jubelirer,* a case of somewhat equal constitutional proportions, and we so hold in this case.[6]

## DEMURRER

Respondent's final preliminary objection is a demurrer.

■■■■ A demurrer may only be sustained when on the face of the complaint the law will not permit recovery, *Stone & Edwards Insurance Agency, Inc. v. Department of Insurance,* 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992), *aff'd,* 538 Pa. 276, 648 A.2d 304 (1994), and all well-pled allegations must be accepted as true. *Id.* Regarding the merits, we further note that constitutional provisions relating to the same subject matter must be construed together and because the Constitution is

6. *See Zemprelli v. Thornburg,* 47 Pa.Cmwlth. 43, 407 A.2d 102 (1979).

an integrated document, we must give effect to all its provisions, if possible. *Cavanaugh v. Davis,* 497 Pa. 351, 440 A.2d 1380 (1982).

■ With regard to count one, concerning the possible disqualification from office under Article IV, Section 6 and Article II, Section 8, Respondent relies on the language of Article IV, Section 14 which states the following:

> In case ... the Lieutenant Governor ... should become Governor ... the President *pro tempore* of the Senate shall become Lieutenant Governor for the remainder of the term. .... Should there be no Lieutenant Governor, the President *pro tempore* of the Senate shall become Governor if a vacancy shall occur in the office of Governor and in case of the disability of the Governor, the powers, duties and emoluments of the office shall devolve upon the President *pro tempore* of the Senate until the disability is removed. **His seat as Senator shall become vacant whenever he shall become <u>Governor</u> and shall be filled by election as any other vacancy in the Senate.**

(emphasis added).

Arguing the principle of *expressio unius, exclusio alterius,* Respondent asserts that because the specific constitutional language states only that the President *pro tempore* must give up his seat as a Senator upon becoming **Governor,** he need not do so upon becoming **Lieutenant Governor,** and that if such a result had been intended, the Constitution would have explicitly so stated.

Petitioners counter that Respondent has failed to distinguish between the concept of filling the role of Lieutenant Governor temporarily and permanently. They maintain that, if the office of Lieutenant Governor were only <u>temporarily</u> vacant because of the disability of the Lieutenant Gover-

nor, or if the Lieutenant Governor needed to assume the role of Governor <u>temporarily</u> due to the Governor's <u>temporary</u> disability, there would be no constitutional violation in Respondent Jubelirer keeping his Senate seat, since Article II, Section 9, Article IV, Section 13 (dealing with the temporary disability of the Governor) and Article IV, Section 14 (second sentence) recognize the concept of a temporary vacancy; Article IV, Section 14 (first sentence), on the other hand, recognizes the concept of a permanent vacancy. They assert, correctly, that the vacancies at issue here were not temporary inasmuch as former Governor Ridge permanently resigned from his office as Governor as did former Lieutenant Governor Schweiker.

Nonetheless, we agree with Respondent that the constitutional provision is clear and unambiguous and compels the President *pro tempore* to resign his senatorial seat **only** if he becomes **Governor.** In so holding, we are cognizant not only of the rule that the mention of a specific matter in a statute or constitutional provision implies the exclusion of other matters not mentioned, but also of the fact that the last sentence in Section 14 was also contained in the Pennsylvania Constitution of 1874, and that the inclusion or exclusion of the words "Lieutenant Governor" were the subject of specific debate.

During the debates concerning Article IV, Section 14 (then numbered as Article IV, Section 15), the then-draft language provided the following: "[President *pro tempore's* ] Office of Senator shall become vacant when he becomes Lieutenant Governor, and shall be filled by election as any other vacancy in the Senate." VII Debates of the Constitutional Convention (1873) at 445 (Singerly, 1873). Delegate Buckalew raised the following question as to the draft language.

Now, the question is whether it is necessary to vacate his office as a member of the Senate when he is placed in the Chair as Presiding Officer. Observe, he will always have a vote when his vote is of any account, when the Senate is equally divided, and the question will be whether we had not better omit the word "lieutenant" before "Governor," so that it shall simply provide that his office shall be vacated in case he shall be called upon to exercise the duties of the gubernatorial office.

*Id.* Delegate Buckalew then moved to strike the word "lieutenant" before "Governor," *id.*, to which Delegate Patterson then

ask[ed] unanimous consent to make that change. Then a Senator will not vacate his office if he is acting as Lieutenant Governor merely, but in case both the Governor and Lieutenant Governor should die or resign, and he assumes the gubernatorial functions, **then, only,** will his office of Senator become vacated.

*Id.* (emphasis added). The President of the Convention asked for unanimous consent to make the amendment. The Convention responded: "Aye!" "Aye!" Then, the President stated: "It is agreed to." *Id.*

Thus it is historically relevant that the framers of Section 14 expressly and unanimously made their intent clear by deleting language that would have required the President *pro tempore* to vacate his seat in the Senate once he assumed the Office of Lieutenant Governor. Instead, they adopted the language still in use today, which specifically provides that the President *pro tempore* of the Senate vacates his seat **only** upon assuming the Governor's Office.

Petitioners' interpretation of Article IV, Sections 6 and 14, on the other hand, is directly contrary to the specific language of the Constitution and ignores the historical circumstances surrounding the formation of the operative language.[7] That his-

7. In drafting the language of Article IV, Section 6, the delegates were very clear as to the intent of the language, spelling out precisely the problem that concerned them and how Section 6 was designed to address it:

We intended that a *candidate* should not *even run*, desiring to make any person holding a national or State office, or a member of Congress entirely ineligible.

II Debates of the Constitutional Convention (1873) at 344 (Singerly, 1873) (Delegate Armstrong) (emphasis added). Delegate Turrell stated that his

intention ... in offering [further amendment to the language] was to prevent any person disqualified by the provisions of this section from *accepting a nomination* for either the office of Governor or of Lieutenant Governor.

*Id.* at 345. (emphasis added). Delegate Corson questioning the need for any further amendment stated:

A very worthy man might be a member of Congress, or might hold some office under the United States government or under this

State government, who would make a most excellent Governor, and we have a right to *elect* him while he holds that office. But he cannot exercise the office of Governor or Lieutenant Governor until he has resigned the other office.... They cannot *elect* a man who is, perhaps, Chief Justice of the Supreme Court of Pennsylvania, because he shall not be eligible while he holds that office. Now my position is, that no matter what office a man holds, let him go out of it before he enters upon a new office.

*Id.* (emphasis added).

Delegate Ewing commenting on the statements of Delegate Corson stated:

I think that the prohibition proposed is a proper one. I hope that we will, so far as possible, keep our State government as an independent and distinct government, in its sphere, from the United States government. As a matter of experience, and as a matter of fact, in quite a number of States in this Union, have we had examples of members of Congress, and officers of the United States government, using their power and

tory and intent is entirely consistent with the application of established principles of constitutional construction to the text discussed above.

While we acknowledge that Petitioners are correct in recognizing that a distinction is made in various constitutional provisions between a temporary vacancy and a permanent vacancy, this dichotomy is not relevant to the precise issue before the Court because the language in Article IV, Section 14 is **absolutely clear** that the President *pro tempore* must vacate his seat only upon becoming **Governor.**

■ There are also reasons why the provisions of Article IV, Section 6 and Article II, Section 8 are not violated. The operative question regarding Article IV, Section 6 is whether the position of Senator is an "office" for purposes of this Section's provisions, thereby prohibiting any Senator, in "office," from becoming or acting as the Lieutenant Governor. We hold that it is not. First, to hold that it is, would place this constitutional provision in direct conflict with Article II, Section 9 (authorizing the President *pro tempore* to assume the role of Lieutenant Governor when that office "shall be vacant") and Article IV, Section 14 (directing that the President *pro tempore* vacate his seat only if he shall become Governor

because the office of Lieutenant Governor is vacant). Second, while, at first blush, there may be a tendency to equate a member of the General Assembly with an "officer" for purposes of Article IV, Section 6, one distinction is that members of the General Assembly generally may not be removed, save by members of their own body. Additionally, the various constitutional provisions themselves draw a distinction between being a member of the General Assembly and holding office. *See, e.g.,* Article II, Section 7 ("[n]o person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth"); Article VI, Section 3 ("Senators, Representatives and all judicial, State and county officers shall, before entering on the duties of their respective offices, take and subscribe the following oath or affirmation ....") Repeatedly, where there are references to holding office, members of the General Assembly are listed separately in matters where other officials are not separately identified.

■ We turn now to an examination of Article II, Section 8.[8] That Section

---

their influence acquired from that office, *to elect themselves* Governors and other officers of the State government. We saw examples of that in Louisiana. It has occurred in several of the western States, and may occur again.... I think it is a wise provision to put in here, that while a member of Congress, or an officer under the United States, a man shall not be a *candidate* for Governor or Lieutenant Governor. If it is desired by the people that he should *run* for the office, and should be Governor, let him resign his United States office; that is easily done.... I hope to see them excluded, even from *candidacy*, for these important State offices.

*Id.* at 346 (emphasis added). Thus, I believe that it is clear from these debates that, with regard to Article IV, Section 6, the delegates were concerned with the problem of certain individuals using predominately federal office to be nominated as candidates and "elect themselves" to high state office and that those seeking election to such offices be unencumbered by other positions.

**8.** Petitioners make similar arguments regarding Article II, Section 6, which pertinently states:

No Senator or Representative shall, during the time for which he was elected, be appointed to any civil office under this Commonwealth to which a salary, fee or perquisite is

must be read in *pari materia* with Article II, Section 9 and Article IV, Section 14, both of which recognize the constitutional obligation on the President *pro tempore* to assume the role of Lieutenant Governor when that office is vacated and neither of which states, suggests, implies, or even hints at the notion that he should give up his Senate seat when fulfilling that constitutional obligation. Additionally, any increase in salary Respondent may receive now that he is Lieutenant Governor, is **not** due to the **passage of any law,** but to the vacancy of the position of Lieutenant Governor **by operation of the Constitution itself.**

■ Next, Respondent demurs to the claim that by holding both offices he violates the principle of separation of powers. The separation of powers doctrine recognizes that each branch of our tripartite system of government has duties upon which the others may not intrude. *Sweeney.* However, some degree of interde-

pendence will exist. *Id.* Succinctly, the purpose of the doctrine is to prohibit tyranny. *Lloyd v. Fishinger,* 529 Pa. 513, 605 A.2d 1193 (1992). To this end, it serves to prevent the concentration of absolute power in a single branch of government, as well as to preclude one branch from usurping another's power. Our Pennsylvania Supreme Court has stated that "[t]he crucial function of the separation of powers principle . . . is not separation *per se,* but the 'checking' power each branch has over the others." *Beckert v. Warren,* 497 Pa. 137, 145, 439 A.2d 638, 642 (1981).

Having concluded that Article II, Section 6 and Article IV, Section 6, when read in tandem with Article IV, Section 14, produce no constitutional infirmity, and it being clear that Respondent merely assumed the duties he was constitutionally obligated to assume, we conclude that there is no loss of the "checks and balances" envisioned by our Constitution's framers and, hence, no separation of powers problem.[9]

---

attached. No . . . person holding any office . . . under . . . this Commonwealth to which a salary, fee or perquisite is attached shall be a member of either House during his continuance in office.

We conclude that the first sentence has no application here because Respondent became Lieutenant Governor, not by appointment, but by operation of law. Regarding the increase in salary issue, our discussion on Article II, Section 8 addresses the point completely.

9. The Dissent states (op. p. 836) that, pursuant to the majority opinion, a Senator serving simultaneously as Senator and President *pro tempore* could cast one vote in that capacity, and in the event of a tie vote could then cast a second vote as Lieutenant Governor and President of the Senate to break that tie, without explaining when, and under what circumstances, that would be permissible. In fact, **the Lieutenant Governor may <u>never</u> vote to break a tie on the final passage of any legislation, which always requires a constitutional majority vote of twenty-six senators.** Article III, Section 4 of the Constitution provides that:

No bill shall become a law, unless on its final passage the vote is taken by yeas and nays, the names of the persons voting for and against it are entered on the journal, **and a majority of the members elected to each House is recorded thereon as voting in its favor.**

Contrary to the inference in the dissent, the President of the Senate may vote to break tie votes **only** on procedural matters and **not** on the passage of substantive legislation. Article 4, Section 4 of the Constitution further provides:

A Lieutenant Governor shall be chosen jointly with the Governor by the casting by each voter of a single vote applicable to both offices, for the same term, and subject to the same provisions as the Governor; he shall be President of the Senate. As such, he may vote in case of a tie on any question *except the final passage of a bill or Joint Resolution, the adoption of a Conference Report or the concurrence in amendments made by the House of Representatives.*

(emphasis added). The Rules of the Senate also provide guidance on the Lieutenant Governor's authority to cast a tie-breaking vote:

In so holding, we do not discount the genuine concerns raised in Petitioners' brief. Nonetheless, we believe that such arguments, in a situation where the constitutional provision is clear, are not for the courts, but rather are properly addressed to the General Assembly and the citizens of Pennsylvania if a constitutional amendment is deemed appropriate.

■ Finally, Respondent demurs to the count that he cannot competently fulfill his role as a member of the Commonwealth's Emergency Management Program, *see* what is commonly referred to as the Emergency Management Services Code, 35 Pa.C.S. §§ 7701–7707, if he continues *to occupy a seat in the Senate.* This last allegation of Petitioners has no constitutional or other legal basis and merely reflects Petitioners' own personal concerns that Respondent may be "too busy" to perform the job functions of the position. Such questions are clearly not within our purview to decide and, again, should be directed to the legislative and executive branches, not the courts. It is, simply stated, not the proper predicate for a cause of action to challenge the provisions of Pennsylvania's Constitution.

Accordingly, we conclude, based upon the foregoing explanation, that the demurrer must be sustained as to all counts.

Judge KELLEY concurs in the result only.

### ORDER

NOW, January 4, 2002, Respondent's preliminary objections to standing and justiciability are overruled. Respondent's demurrer is sustained as to all counts and the petition for review is dismissed.

SMITH, Judge, concurring and dissenting.

I concur with the Majority's reasoning and disposition of the standing and separation of powers/political question issues. I respectfully dissent, however, from the Majority's ruling that the Pennsylvania Constitution, in particular Article IV, § 14, allows Respondent Robert C. Jubelirer to occupy three offices simultaneously: two legislative branch offices as Pennsylvania Senator and President pro tempore of the Senate and an executive branch office as Lieutenant Governor of Pennsylvania. Respondent became the Commonwealth's permanent Lieutenant Governor when former Lieutenant Governor Mark Schweiker became the Commonwealth's Governor on October 5, 2001. The Majority concludes that relevant constitutional provisions are clear and unambiguous and that they mandate the result in this case. In fact the provisions invite a contrary and very rational interpretation, and I would therefore overrule Respondent's demurrer to Petitioners' complaint for declaratory judgment.

Petitioners John A. Lawless, Charles A. Pascal, Jr. and Joseph H. Wiedemer seek a declaratory judgment from this Court determining whether Respondent may occupy simultaneously the three positions that he now holds.[1] They assert that the fundamental issue in this case is whether

In the case of a tie vote the President of the Senate may cast his vote to break such tie so long as by doing so *it does not violate any provisions of the Constitution of Pennsylvania.* **In the event there is a tie vote on a question requiring a constitutional majority, [i.e. all substantive legislation] the question falls.**

Rules of the Senate of Pennsylvania, XXI. Voting, Rule 12 (emphasis added).

1. Respondent in actuality occupies four offices. In addition to those mentioned, he serves as President of the Senate.

the Constitution requires the President pro tempore to vacate his Senate offices upon permanently becoming the Lieutenant Governor. Petitioners argue that Article II, §§ 6 and 9 and Article IV, §§ 6 and 14 of the Constitution do not contradict one another and that they clearly distinguish between temporary and permanent vacancies in office and the differing results attendant to each such vacancy. When read together they support the conclusion that Respondent was required to vacate his Senate offices upon his permanent accession to the office of Lieutenant Governor.

It is well settled that courts must interpret constitutional language in its popular sense as the voters must have understood it when they voted on it. *Zemprelli v. Thornburg*, 47 Pa.Cmwlth. 43, 407 A.2d 102 (1979). In cases where the courts of this Commonwealth have not had occasion to consider and to rule upon an issue, decisions of other state courts may be relied upon for their persuasive value. In *Commonwealth v. Cleckley*, 558 Pa. 517, 522 n. 5, 738 A.2d 427, 430 n. 5 (1999), the Pennsylvania Supreme Court stated that it "created a four-part methodology to aid in the analysis of state constitutional claims" in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). Specifically, the court will look at the text of the Pennsylvania constitutional provision; the history of the provision, including Pennsylvania case law; related case law from other states; and policy considerations unique to Pennsylvania.[2] *Id.* The court must look not only to the letter of the words but to

the spirit behind them as well in determining the meaning of a constitutional provision. *Pennsylvania Prison Society v. Commonwealth*, 565 Pa. 526, 776 A.2d 971 (2001).

Petitioners invoke the following constitutional provisions. They govern, *inter alia*, the prohibition against the appointment of legislators to any other salaried office, the duties of the President pro tempore in the absence of the Lieutenant Governor, the disqualification from service as Lieutenant Governor or Governor and temporary and permanent vacancies occurring in those offices.

**Art. 2, § 6 Disqualification to hold other office**

No Senator or Representative shall, during the time for which he was elected, be appointed to any civil office under this Commonwealth to which a salary, fee or perquisite is attached. No member of Congress or other person holding any office (except of attorney-at-law or in the national guard or in a reserve component of the armed forces of the United States) under the United States or this Commonwealth to which a salary, fee or perquisite is attached shall be a member of either House during his continuance in office.

**Art. 2, § 9 Election of officers; judge of election and qualifications of members**

The Senate shall, at the beginning and close of each regular session and at such other times as may be necessary, elect one of its members President *pro tem-*

2. In *Bryant v. English*, 311 Ark. 187, 843 S.W.2d 308 (1992), the Supreme Court of Arkansas observed that when construing constitutional amendments, courts may look to the history of the times and to those conditions existing at the time of the adoption of an amendment in order to ascertain the mischief to be remedied and the remedy adopted. The court interpreted pertinent constitutional provisions so as to allow the lieutenant governor to succeed to the office of governor rather than to act as governor to eliminate separation of powers and dual office-holding problems and to avoid the mixing of executive and legislative powers.

*pore*, who shall perform the duties of the Lieutenant Governor, in any case of absence or disability of that officer, and whenever the said office of Lieutenant Governor shall be vacant. The House of Representatives shall elect one of its members as Speaker. Each House shall choose its other officers, and shall judge of the election and qualifications of its members.

### Art. 4, § 6 Disqualification for offices of Governor, Lieutenant Governor and Attorney General

No member of Congress or person holding any office (except of attorney-at-law or in the National Guard or in a reserve component of the armed forces of the United States) under the United States or this Commonwealth shall exercise the office of Governor, Lieutenant Governor or Attorney General.

### Art. 4, § 14 Vacancy in office of Lieutenant Governor

In case of the death, conviction on impeachment, failure to qualify or resignation of the Lieutenant Governor, or in case he should become Governor under the preceding section, the President pro tempore of the Senate **shall become** Lieutenant Governor for the remainder of the term. In case of the disability of the Lieutenant Governor, **the powers, duties and emoluments of the office shall devolve** upon the President pro tempore of the Senate until the disability is removed. Should there be no Lieutenant Governor, the President pro tempore of the Senate shall become Governor if a vacancy shall occur in the office of Governor and in case of the disability of the Governor, the powers, duties and emoluments of the office shall devolve upon the President pro tempore of the Senate until the disability is removed. His seat as Senator shall become vacant whenever he shall become Governor and shall be filled by election as any other vacancy in the Senate. (Emphasis added.)

Respondent succeeded to the office of Lieutenant Governor by virtue of the Lieutenant Governor becoming Governor pursuant to the resignation of the Governor, which makes the first sentence of Article IV, § 14 clearly applicable. Nevertheless, the Majority focuses on the fourth sentence of that Section which applies when the President pro tempore succeeds to the office of Governor. The Majority notes and relies on the rule that any mention of a specific matter in a statute or constitutional provision necessarily implies that other matters not mentioned are excluded. Reciting the maxim *expressio unius est exclusio alterius*, the Majority states that the fourth sentence in Section 14 is unambiguous and agrees with Respondent that it compels the conclusion that the President pro tempore resigns his senatorial seat only if he becomes the Governor.[3]

Petitioners argue that Article II, § 9 addresses temporary vacancies in the office of Lieutenant Governor and that permanent vacancies are addressed in Article IV, § 14, and those provisions permit the Senate's President pro tempore to retain his Senate offices only when assuming the powers and duties of the Lieutenant Governor during a temporary vacancy in that office. Respondent relies upon an 1898 Minnesota Supreme Court decision in *State ex rel. Marr v. Stearns,* 72 Minn.

---

**3.** The maxim *expressio unius est exclusio alterius* is generally interpreted to mean that the mention of specific matters in a statute implies the exclusion of others not mentioned, but the doctrine is only an aid in statutory construction or constitutional interpretation and may not be applied to defeat legislative intent. *Knecht v. Medical Service Ass'n of Pennsylvania,* 186 Pa.Super. 456, 143 A.2d 820 (1958).

200, 75 N.W. 210 (1898), *rev'd on other grounds,* 179 U.S. 223, 21 S.Ct. 73, 45 L.Ed. 162 (1900), to justify his arguments while at the same time ignoring the full import and holding of that court. The Minnesota court ultimately ruled that the Minnesota constitution did not require the president pro tempore of the senate to vacate his senate seat when he assumed the duties of the lieutenant governor due to the resignation of the governor.

The reasoning suggests the opposite result here because of the significant distinctions that exist between *Stearns* and this case. One distinction is the Minnesota court's determination that the duties of its lieutenant governor and president pro tempore were identical, both belonging strictly to the legislative department of government—neither of them had any power or duty belonging to the executive department. However, the Pennsylvania Lieutenant Governor is a member of the executive department whereas the President pro tempore's duties are solely legislative.[4] Further, the Minnesota court noted that its constitution only implied that vacancies may either be permanent or temporary. The court reasoned that "if the Constitution recognizes both permanent and temporary vacancies in the of-

fices of governor and lieutenant governor, such fact has an important bearing on the question whether the president pro tempore ceases to be a senator when he becomes a lieutenant governor." *Id.,* 72 Minn. at 211–212, 75 N.W. at 212.

Article IV, § 14 of the Constitution declares when and under what circumstances a vacancy in the office of Lieutenant Governor shall be permanent or temporary. The first sentence of Section 14 expressly provides for the succession in office in the event of a permanent vacancy in the office of Lieutenant Governor. Obviously death, impeachment, failure to qualify or resignation of a Lieutenant Governor connotes a permanent occurrence. Likewise, the succession is permanent when the Lieutenant Governor becomes the Governor due to the Governor's resignation. In the event of a permanent vacancy, the President pro tempore "shall become" the Lieutenant Governor for the remainder of the term. Hence, the President pro tempore shall succeed to the office of Lieutenant Governor and hold the title rather than merely serve in an acting capacity. Otherwise, the second sentence in Section 14, which employs different language, would have no meaning.[5]

---

4. Under Article IV, § 1 of the Constitution, the Lieutenant Governor serves as a member of the executive department of the government. In that capacity the Lieutenant Governor chairs the Board of Pardons under Article IV, § 9. He also serves as President of the Senate and may vote in the case of a tie on any question except the final passage of a bill or joint resolution, adoption of a conference report or concurrence in amendments made by the House of Representatives. Article IV, § 4. As President of the Senate he chairs Senate sessions and maintains decorum, signs bills and joint resolutions passed by both Houses of the legislature, signs resolutions, orders, writs, warrants and subpoenas issued by the Senate and submits points of order involving the constitutionality of any matter to the Senate for decision. The President pro

tempore possesses the power among other things to appoint members, chairs and vice-chairs of standing committees of the Senate, to fill vacancies in standing and special committees, to refer to the appropriate Senate committees bills and resolutions which may be introduced in the Senate or received from the House of Representatives, to appoint and direct Senate employees and lastly to name any Senator to preside in the absence of the President. If **both** the President and the President pro tempore are absent, the Majority Leader or his designee shall preside. See Rules of the Senate of Pennsylvania, Session of 2001, attached as Exhibit A to the complaint.

5. *See State v. Heller,* 63 N.J.L. 105, 42 A. 155 (1899) (constitutional provision required that in case of resignation of governor the "pow-

The second sentence in Article IV, § 14 plainly states what shall occur when the Lieutenant Governor is disabled and thus temporarily unable to perform his duties. In the event of a vacancy in the office of Lieutenant Governor due to disability, the powers and duties of the office shall "devolve upon" the President pro tempore until the disability is removed. The Lieutenant Governor's disability may end at any time whereupon the Lieutenant Governor shall resume his duties. Evidently, when such disability ends the President pro tempore no longer serves in the dual capacity. Because constitutional provisions should be construed in a sensible and reasonable manner, *see Commonwealth v. Novak,* 395 Pa. 199, 150 A.2d 102 (1959), it would be illogical to suggest that the President pro tempore should vacate his Senate offices when he temporarily assumes the Lieutenant Governor's powers and duties. This interpretation comports with the first sentence and reinforces the dissenting view that the fourth sentence does not clearly and unambiguously dispose of the issue as the Majority would hold.

The Majority reasons that the fourth sentence of Article IV, § 14 ultimately clinches its holding and that the debates from the 1873 constitutional convention expressly demonstrate that the framers of the Constitution intended for the President pro tempore to vacate his seat only upon becoming the Governor. In rejecting constitutional debate as irrelevant when construing and interpreting constitutional provisions, the Court reiterated the following principles in *Zemprelli:*

> Both briefs here have offered for consideration some of this constitutional

amendment's legislative history, which we may consider even where a statute is unambiguous. *United States ex rel. Tillery v. Cavell,* 294 F.2d 12, 15 (3d Cir.1961). Although committee and legislative commission reports may be considered, the remarks of individual legislators in debate are not relevant for the obvious reason that they represent only one person's view and not that of a proposing body or an enacting body. *Martin['s] Estate,* 365 Pa. 280, 283, 74 A.2d 120, 122 (1950); *National Transit Co. v. Boardman,* 328 Pa. 450, 197 A. 239 (1938); *Tarlo's Estate,* 315 Pa. 321, 172 A. 139 (1934). *See also* 1 Pa.C.S. § 1939.

*Id.,* 407 A.2d at 109.[6] The Pennsylvania Supreme Court did not equivocate on this subject in *Commonwealth ex rel. Margiotti v. Lawrence,* 326 Pa. 526, 532, 193 A. 46, 48–49 (1937):

> The constitutional debates of 1873 were quoted to sustain that case [*Armstrong v. King,* 281 Pa. 207, 126 A. 263]. See No. 5 Debates of the Constitutional Convention of 1873, pp. 9–14. Such statements must be understood to be merely the personal opinion of individual members of the Convention. What the Convention adopted, and what the electors of the commonwealth accepted, is the Constitution as it is written, and its clear meaning cannot be distorted to fit the views of those particular delegates. It must be assumed that the people who voted upon the Constitution gave to the words employed their common and ordinary significance. Justice Paxson in *Commonwealth v. Balph,* 111

---

ers, duties and emoluments of office shall devolve upon" the president of the senate and not that he "shall thereby become" the governor and hold the title of the office; the language used was not ambiguous).

**6.** *See* modified view expressed in *Commonwealth v. Wilson,* 529 Pa. 268, 602 A.2d 1290 (1992), citing *Commonwealth v. DePasquale,* 509 Pa. 183, 501 A.2d 626 (1985), which relied on *Martin's Estate.*

Pa. 365, at page 380, 3 A. 220, 229 pointed this out forcefully:

'In the consideration and discussion of this section of the constitution we throw out of view the copious citations which have been furnished us from the debates in the convention. They are of value as showing the views of individuals members, and as indicating the reasons for their votes; but they give us no light as to the views of the large majority who did not talk; much less of the mass of our fellow citizens whose votes at the polls gave that instrument the force of fundamental law. We think it safer to construe the constitution from what appears upon its face.'

Even if the Court were permitted to consider the delegates' statements, as the Majority presumes, they merely represent isolated and conflicting expressions which do not resolve the issue in this case. Specifically, the Majority latches onto one delegate's reference to "then only" shall the President pro tempore vacate his Senate seat, when discussing his accession to the office of governor. This language was not included nor otherwise incorporated into the final version of the amendment voted upon by the people. In addition, one delegate questioned whether a senator would not vacate his office if he is "acting as Lieutenant Governor merely," after which unanimous consent was made. This statement supports the view that a temporary devolution of the Lieutenant Governor's powers and duties upon the President pro tempore does not and should not require him to vacate his Senate seat. Nonetheless, the fourth sentence pertains in the event no Lieutenant Governor exists and the President pro tempore is required to become Governor as specified in the third sentence. When that event occurs the President pro tempore must then vacate his Senate seat. This case, however, does not involve the President pro tempore becoming Governor.

The framers of the Constitution intended for the President pro tempore to permanently become the Lieutenant Governor under specified circumstances, and they provided for this to occur by the language that they used. *Compare People ex rel Parks v. Cornforth,* 34 Colo. 107, 81 P. 871 (1905) (constitutional provision used the same language ["duties and powers shall devolve on"] to require president pro tempore to act as lieutenant governor in case of temporary or permanent vacancy in the lieutenant governor's office, and if framers had intended for president pro tempore to "become" lieutenant governor de jure upon resignation of the governor, then framers would have said so). Thus, under the standard enunciated in *Cleckley,* if the President pro tempore becomes the permanent or de jure Lieutenant Governor the President pro tempore should vacate his senatorial offices.

The Majority's ruling, for the first time in Pennsylvania history, permits a person to hold permanently more than one high public office in separate branches of government in direct contravention of the Constitution. Moreover, even the Senate recognized the improbability of one Senator holding the offices of President and President pro tempore when the Senate determined the procedures it would follow in the absence of both of these officers. *See* n.4 supra. Notwithstanding its own rules, it is highly conceivable that the Senate, under the Majority's view, could allow a Senator serving simultaneously as President pro tempore, Lieutenant Governor and President of the Senate to cast a vote as Senator and President pro tempore on the one hand and in the event of a tie vote to cast a second vote as Lieutenant Governor and President of the Senate to break that tie. The Majority does not fully ap-

preciate the consequences of its decision and the potential harm that it may cause to the established constitutional form of government in this Commonwealth.

In its response to this dissent, the Majority adds more text from the 1873 constitutional debates on Article IV, § 6. It then proclaims: "[I]t is clear from these debates that, ... the delegates were concerned with the problem of certain individuals using predominately federal office to be nominated as candidates and 'elect themselves'.... Slip op. at 15, n6. Aside from the Supreme Court's admonition that debates from the 1873 constitutional convention hold no value or relevancy when construing provisions of the Constitution, *Margiotti,* the Majority's conclusion is wholly unsupported. Article IV, § 6 unambiguously precludes a person holding state office from exercising the office of Governor or Lieutenant Governor.

The Majority takes further liberty with the Constitution in responding to the dissent by injecting the rule that the Lieutenant Governor as President of the Senate may vote to break a tie only on procedural rather than substantive matters. Thus the potential for dual voting is of no moment. Nowhere in the text of Article IV, § 4 or in any other constitutional provision do the framers articulate the construction announced by the Majority. The Lieutenant Governor's duties have been enumerated in relevant part. *See* n4 supra. The Constitution specifies three exceptions to the tie-breaking rule, clearly involving substantive matters but leaving a wide variety of other questions both substantive and procedural that the Lieutenant Governor may vote upon in the event of a tie. The Majority implies that no situation could ever occur involving the Lieutenant Governor's vote on a substantive matter.

This Court recognized the possibility that the President of the Senate could

have broken a tie vote that would have occurred in the event a newly elected Senator had not voted on his own seating. *Jubelirer v. Singel,* 162 Pa.Cmwlth. 55, 61 n. 4, 638 A.2d 352, 355 n. 4 (Pa.Cmwlth. 1994). It is beyond debate that a vote to break a tie on the seating of a Senator represents a substantive as opposed to a procedural question. Thus the Majority's declaration that the Lieutenant Governor as President of the Senate may only break a tie in procedural matters is once again wholly unsupported by the Constitution and represents yet another example of the Majority's attempt to rewrite the Constitution.